We have four arguments this morning, and we will begin with number 23-2061, Regis against Collins. Good morning, Your Honor. May it please the Court, Kenny Dohakis for appellant, Mr. Regis. On behalf of Mr. Regis, I want to thank the Court for this opportunity to present his appeal. This appeal asks the Court to interpret Diagnostic Code 5003 insofar as it directs In this case, there are several preliminary aspects that are undisputed. Mr. Regis, the Board found that he has limited flexion to 5 degrees and that that is a noncompensable rating under the appropriate Diagnostic Code 5261. Limited extension? Yes, Your Honor. I thought you said flexion. If I did, Your Honor, I apologize. Right, so the flexion is already rated 10%, and we're looking for a 10% rating for the extension. The parties also agree that when there is limited flexion and limited extension, VA regulations require VA to separately rate each of them. The dispute here comes from the language of the regulation on what exactly the Diagnostic Code 5003 compensates. And just, do you think that the Veterans Court decided this question and related to that? Do you think that you raised this question to the Veterans Court, which may be two separate things? I think they are two separate things, Your Honor, and I think that the answer to both of them is yes. Number one, Mr. Regis did ask for a specifically requested a 10% rating for the limited extension, and the Veterans Court, when it reviewed the Board's finding to assign a noncompensable rating, failed to correctly apply the law because it overlooked that arthritis is rated under 5003. But you didn't, did you, I don't remember that you presented the specific argument about 5003 that you are making here. There were two footnotes in your brief that cited what, OGC opinion or opinions, I don't know if it was more than one, for a different point about 5003, but not this point. No, Your Honor. This specific interpretation of the regulation was not presented to the Veterans Court because Mr. Regis had asked for a 10% rating for the limited extension. And when we look at the- Was there any attempt to argue this in the alternative? I mean, sometimes that happens. You'd ask for a 10% rating under one diagnostic code, and then if you have a backup argument that would say even if it's zero, I still deserve 10%, then you would present it as an alternative argument. And I don't see where that was made. It wasn't explicit, Your Honor, but I think when you look at specifically how 5003 rates arthritis, that it would be an implicit acknowledgment that either you meet the 10 degrees under 5261 for a 10% rating, or it's a 10% rating because it's noncompensable. One of the concerns I have is that there's at least two interpretation arguments for 5003 that would suggest that it doesn't apply necessarily. You know, it's not clearly applying. One of them is, you know, argument made by the government. But, I mean, so in other words, there needs to be an interpretation to determine whether it would even apply. So I'm having a hard time understanding why it wouldn't have to be raised expressly instead of implicitly. Yes, Your Honor. I mean, I think that when you look at the pleadings in conjunction with what the Veterans Court said, that it the Veterans Court said that a 10 degrees or more limited flexion, and I'm looking on page 6, 7 of the appendix, is required for a compensable rating under Diagnostic Code 5261, there's simply no error in how the Board treated the Veterans limited right knee extension. But under 5003, there was error. Because when it doesn't meet the compensable requirements for the diagnostic, for the limited motion for that joint, then Diagnostic Code 5003 requires a 10 percent rating. How can we say that the Veterans Court should have been aware that you were making that argument? The reason that the Veterans Court erred in this case, Your Honor, is that arthritis must be rated under 5003. There's no other diagnostic code that's possible. As we pointed out in our briefing, 4.27, 4.21, I think 4.27 in particular very explicitly says with diseases, preferences to be given to the number assigned to the disease itself if the rating is determined on the basis of residual conditions. And then the next sentence, it highlights another form of arthritis, rheumatoid, which is 5002, which is, for all intents and purposes, the same, just a different type of arthritis. And so the Veterans Court did not have the discretion to rate it or to analyze it under a different diagnostic code. I don't think the parties raised this necessarily, but 5003 says degenerative arthritis other than post-traumatic, right? Correct, Your Honor. It does say that. Was your client diagnosed with post-traumatic? I am not certain on that specific factor, Your Honor. I think that he has degenerative arthritis and he has degenerative arthritis in the knee. And the findings of the VA before it came up to court acknowledged that the arthritis was a residual of his service injuries. The government has an argument about disagreeing on the merits with your interpretation of 5003. So put aside for now the question of whether the issue was raised, just on the merits. What's your answer to the government's argument that 5003 just doesn't apply here in the way that you say it does?  So I think that the government ---- I think it has something to do with this joint is already being rated at 10 percent.  And the way I understand their argument is that limited motion is just limited motion. And what that interpretation does ---- Whether it's straightening or bendiness. Correct, Your Honor. I mean, it's ---- I understand their argument to say that arthritis is rated as limited motion, period, not as limited motion in the sense that there can be different forms of limited motion. And our primary ---- And so in that view, 5003 is a ---- in the government's view, picks up a situation where there is limited motion, but no rating has been given for that joint for limited motion. And you want to say the different forms of limited motion need to be thought of separately? Yes, Your Honor. And the reason for that, as we extensively talked about in our brief, number one, going back to Saunders 1110, the basis of compensation is the disability. And the disability is the impairment in function. So when we look at particularly the spine, the shoulder, we highlighted shoulder because there is a precedent decision on that. And the knee, the shoulder, the spine has a single rating for all limited motion. The knee, however, recognizes that there are two separate impairments involved with the knee. And so the limited extension is different than ---- Hence the two different diagnostic codes. Correct, Your Honor. And so in conjunction with 4.25B, which, again, specifically highlights arthritis as a disease that causes additional impairments that must be separately rated, we look at 1110 and Saunders and how they have interpreted the term disability. It's clear that when 5003 talks about rating limited motion on the basis of limited motion under the appropriate diagnostic codes for the joint, it is referring to that joint and looking then at how does VA describe the different kinds of impairments that are possible or present in the joint. And so when, for instance, again, going back to the shoulder, any limited motion is a 20 percent minimum, 30 and so on. But with the knee and the hip, the elbow, there are multiple different forms of limited motion that each limit functioning in a different way that the VA has recognized causes a different amount of impairment. And just as a practical matter, I know this kind of thing is second nature to you, but not to me. What's the benefit that Mr. Regis would get if you were to get this second 10 percent rating? So the benefit to Mr. Regis is that under 4.25A, all of the ratings are combined under their table. So whereas a single rating would be 10 percent, two 10 percent ratings would combine to, under the chart, 19 percent, which would round up to a 20. So if this were his only disability, his only impairments, then rather than a 10 percent, he would have a 20 percent disability rating. And in other situations- And he has some other disability ratings already? He does, Your Honor, yes. He has some additional. And in fact, the board decision granted some additional ratings for this knee based on other impairments. But there's still room for more? There is, Your Honor, because as we combine these, particularly when the bilateral factor comes into effect under 4.26, you combine the two extremities first, add 10 percent, and treat it as a single disability, which when we're looking at the bilateral factor in particular, it can have a pretty substantial impact on the overall ratings. And again, so again, this is language that I guess I would like a little clarification of. In 5003, where it does apply, it says it's to be combined, not added. Explain that to me. And that's what I was just describing, Your Honor. So again, 4.25A talks about combining. B talks about separately rating all disability that results from a disease. The same language is used here in saying that so when there is a joint is affected by limited motion, you combine those ratings. I'm asking a perhaps even more elementary question. What's the difference between combining and adding? So adding is just straight up math. 10 plus 10 is 20. Combining is 19. Correct, Your Honor. It refers back to the table. Okay. And the math is very confusing. I don't pretend to understand it, but the chart is very clear on how two 10 percents are treated. So again, this language here reinforces by referring back to the combined ratings table, by referring to in 4.25B, referring back to arthritis as combining separate or rating separate disabilities from the same disease requires that each disability is subject to the 10 percent minimum. Okay. Thank you. Thank you, Your Honor. That's how I know who you are, Mr. Farber. May it please the Court. The Veterans Court's decision should be affirmed for two reasons. First, Mr. Regis did not raise this argument before the Veterans Court, this argument about Diagnostic Code 5003. He's therefore waived it. And the Veterans Court didn't make any decisions about the application of Diagnostic Code 5003, nor for that matter did the Board. So I have a, I guess, sort of a procedural question. I don't know if that's the right label. Suppose we were to agree with you that the argument was, I think we now say forfeited, but anyway, not presented to the Veterans Court. That's a non-jurisdictional defect. Would we dismiss or affirm? And on what authority would we make that choice? So I would under, I would typically argue that the Court should affirm if there's a non-jurisdictional defect that the Court identifies.  And we've said a number of times that failure to present an argument to the Veterans Court is a non-jurisdictional defect. Right. Okay. So that would be an affirmance. Okay. And that's how we framed our argument in the brief. If the Court doesn't think it has any jurisdiction at all, then the appropriate disposition, of course, is to dismiss. But we framed this as an affirmance. But the other side makes an argument that 5003, properly interpreted, has a certain meaning that would allow for this second 10 percent rating. That's a legal assertion. It probably, if correct, would change the result of the Veterans Court, and a Veterans Court decision. So it would be implicitly decided, even though not presented, which I think is a line between the jurisdiction question and the preservation non-jurisdiction question. I agree with that as a general matter. Okay. The one thing I would say here is to reach that issue, the Court would also have to make certain factual findings. There are certain factual predicates to the application of 5003 that because this issue was never addressed by the Board, haven't been made clear. What are those factual predicates? So there has to be degenerative arthritis. It has to be established by X-ray findings. And there has to be either a limitation of motion or pain under certain circumstances. What about not post-traumatic? You're right, Your Honor. They do say that, not post-traumatic. So, Judge Scalia, you're right to call attention to that issue as well. But is that characterization settled in this case, or is there still uncertainty about that? Normally, there would be a Board finding to resolve that. So to me, it's unsettled still, and I'm not aware one way or the other. I thought that maybe there was a finding that he did not, that he had post-traumatic arthritis at JA-29, but I could be misunderstanding. So this looks like the regional office decision. So I'm not sure what Mr. Regis' view is on that. I don't think he appealed that to the Board. I don't think there's a Board. I don't think the Board's addressed that. But all this really emphasizes just reasons why the Court shouldn't address this issue in the first instance, because there are all sorts of complexities that are supposed to be worked out in the administrative process that just haven't been worked out yet here. I also want to emphasize that if the Court agrees with us, it's not going to forever bar Mr. Regis from filing a claim. He could file it today, to my understanding, based on Diagnostic Code 5003. He could go through the process of getting a Board decision. Could he make it an acute claim? I mean, he could try, but I mean. If 5003 has not been interpreted, as I understand it, on this particular issue about counting different forms of knee motion problems, so it wouldn't be like a George situation where you have a clear position which gets changed by a later clear ruling saying the earlier position was wrong. So I think the question I would have is whether how forfeiture and waiver sort of interact with the Q standard. So I think we might argue that if you don't raise an argument before the Veterans Court, then to come back on clear and unmistakable. It's not clear and unmistakable error for the Veterans Court to decline to consider an argument you didn't raise. They're allowed to do that. So that's my initial response.  But Q doesn't apply to the Veterans Court. It applies either to the Board or to the R.O., but not to the Veterans Court. Well, if you don't preserve – if you don't – if you don't exhaust your administrative remedies. Okay. We're getting way ahead of ourselves. Yes. If you don't exhaust your administrative remedies is the point. But – so I'm not – I don't have a definitive answer, yes or no, but I would have some skepticism about it, I guess is what I would say. So that's the issue on, you know, presentation to the Veterans Court. I'll just briefly address the merits as well. So I think, Judge Toronto, you accurately described our position on the merits. There are a couple reasons I would provide in support of it. One is that Diagnostic Code 5003 is clearly focused on this question of double compensation, the anti-pyramiding rule under Section 4.14. We understand it to implicitly reflect that prohibition in the regulation. So that's one – that's one basis for our reading. You know, a second is some of the language arguments we make in our brief, such as the reference to the plural diagnostic codes. So the non-compensability inquiry is directed to all diagnostic codes. And we acknowledge that separately 5260 and 5261 do contemplate separate ratings based on separate motions. The distinction, though, that I would draw is 5003 has a different type of inquiry, a more generic general condition of arthritis rather than the specific limitations contemplated in 5260 and 5261, which raises more concerns that you could be double compensating based on any limitation of motion that's a manifestation of arthritis. If you have such a limitation or such a manifestation, then compensating the arthritis in addition to compensating the manifestation of the arthritis is where you run into Section 4.14. Do you disagree with the idea, which I think the other side was raising, that arthritis in the knee can cause, you know, either two different kinds of movement problems and actually different disabilities might flow from those different limitations on motion? I think you can infer from the fact that the VA separately rated them and allows compensation under both to do that. There are some things that you can't, that you're seriously impaired in doing if you can't truly straighten your leg and other things that you are impaired in doing if you, you know, you can't bend it enough to squat down, for example. The fact that there are two separate ratings and you can get both, I think, supports that view. We're distinguishing between that point, that factual point, which we would agree with, and the nature of what the diagnostic codes are compensating, in the sense that arthritis is defined based on limitation of motion. If you're already compensating a limitation of motion, you're effectively compensating arthritis. That's what we understand the concern to be addressed by Diagnostic Code 5003. I'm interested in your point about Mr. Rages being able to bring a 5003 claim. If we were to decide the case on the facts before us, let's say we just disagreed with you that the issue is not sufficiently raised and we don't have a sufficient factual basis, we could be in a situation where we're deciding it and precluding him from bringing a subsequent 5003 claim. Is that correct? Well, if you reject his argument, then yes, I think he is going to have some conclusion issues. What you're suggesting, Judge Scarcey, is that not deciding the case might leave open doors for him that could otherwise be closed. I would agree with that. What's the clearest way or the clearest decision from this Court that would have the least preclusive effect? I think if the Court says this issue has not been presented to the Board and hasn't been presented to the Veterans Court, therefore we're not going to consider it in the first instance. And you could say what I said, which is that he can bring claim based on this theory, you know, today if he wants to. I think that the signal would be very clear that the door is open to him. And the appellant cites the – is it the Priscippi case that essentially says that this Court's got whole case jurisdiction and I guess – I'm sorry, Priscippi case and that sort of encourages the Court to be a little bit aggressive with respect to deciding issues that may be underdeveloped. The downside of that, though, is that it precludes the person filing the claim from getting a fair hearing on a fully developed claim. I agree with that. There are benefits to the administrative – the VA administrative process for veterans. The Board, you know, they have duties to look at issues reasonably raised by the record. So it can take time to go through the process, but there are real benefits and there are reasons that Congress – that Congress set it up. So I take your point and I agree with it. If there are no further questions, I respectfully request that the Court affirm. Thank you. So I do want to first correct a statement that I said with respect to the diagnostic code. Looking on page 20 of the appendix, this is a rating code sheet. This was prepared a little early. In 2009, after his initial injury, you can see that the right knee has patellar tendinitis. And when looking at one of the other diagnostic codes, I believe it's 5024, it says – and then just below that there's a note. This is in 4.71a. It says, Evaluate diseases under diagnostic codes 5013 through 5024 as degenerative arthritis based on limitation of motion. And so – and I highlighted in our briefing that he does have arthritis, but to your point, Judge Sterr, even if he doesn't have the specific degenerative arthritis, that diagnostic code, which does apply to him and has already been a fact determined by the agency, requires the VA to have rated under 5003. So if – And for your purposes, there was something that suggested it's post-traumatic on page A27 and A29. I'm just telling you this for future reference. Should you bring a new claim? Yes, Your Honor. Okay. Can I just ask, why haven't you raised 5003 before? Why wasn't it raised at the Veterans Court? I don't know, Your Honor. Your Honor, I got involved at this stage and after the Veterans Court has already dealt with it. In speaking with the attorney, I understood that this was – that he was aware and understand what this regulation meant, and that was kind of our initial discussion in looking at the Veterans Court's decision. I can't speak for why the veteran or the – either agency or the court didn't raise it. But what I can say again is that – Just quickly, do you disagree with counsel that you could raise a 5003 claim tomorrow? We can, Your Honor, except I would just have two responses to that. Number one is we need to know today what the law says. The VA right now is misinterpreting it, at least according to how we read it, in requiring additional function disability in order to meet the criteria for a rating under 5003. That is not what the plain language of the regulation requires. And so even if he were to file another claim, he would still get the same result. But regardless, even if this Court were to rule against Mr. Regis, we're perfectly happy with that. We want this law settled. This is why we bring these regulatory interpretation cases, because right now there's a lot of uncertainty in how this regulation is supposed to be applied. The availability of a higher rating is still available should he, if the Court were to find in favor of the government, have the higher limitation of functioning in whatever movement of the knee or other joint. But we think, again, that the plain language, particularly when looking at 4.25b, 1110 Saunders, is that it's the impairments, it's the functional impairment, the disability that is being compensated. It's not the disease. And that's really where the government's interpretation falls apart, is it requires that the ‑‑ You're repeating yourself. I understand, Your Honor. I was trying to sum up. But that's all we have. Thank you for your time. Thank you. And I look forward to your decision. Thanks to both counsel. The case is submitted.